UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEE KENNEDY CO., INC., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 17-cv-10698-IT |
| | * | |
| ARCH INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER
January 4, 2019

TALWANI, D.J.

Before this court is an insurance coverage dispute. In early 2013, a private school hired Lee Kennedy Co., Inc. ("LKC"), a construction contractor, to construct their new gymnasium. LKC hired a subcontractor to construct the gymnasium floor. However, the subcontractor's workmanship allegedly resulted in deficiencies with the floor that LKC ultimately corrected. LKC now brings this suit against Arch Insurance Company ("Arch") claiming entitlement to coverage under the Arch Contractor Controlled Insurance Program policy ("the Policy") for the costs LKC incurred to fix the floor deficiencies caused by the subcontractor's work.

The parties have filed cross-motions for summary judgment. Arch's Motion for Summary Judgment [#25] seeks summary judgment on both the breach of contract (Count I) and declaratory judgment (Count III) claims, and LKC's Cross-Motion for Summary Judgment [#32] seeks summary judgment on the declaratory judgment claim.[1]

For the foregoing reasons, Arch's Motion for Summary Judgment [#25] is ALLOWED and LKC's Cross-Motion for Summary Judgment [#32] is DENIED.

---

[1] The parties agreed to defer the resolution of the Massachusetts G.L. c. 93A claim until the resolution of the other two claims. See Scheduling Order [#10].

1

I.   FACTS

  A. The Project

In early 2013, LKC signed a contract with the Winsor School to construct a new gymnasium (the "Project"), and in May 2013, Arch's previously issued Policy covering LKC for specific construction projects was amended to include the Project. Transmittal Aff. Barbara O'Donnell Supp. Def.'s Mot. Summ. J. ("O'Donnell Aff.") Ex. C [#28-3], Ex. D [#28-4].

In December 2013, LKC subcontracted the Project floor work to a subcontractor, Kenvo Floor Co., Inc. ("Kenvo"), who subsequently enrolled in the Policy as an insured subcontractor. Id. Ex. B [#28-2], Ex. E [#28-6]. Kevno's primary work included the installation of "kip" pads, the subfloor, and the finish floor surface. Id. Ex. A ¶ 8 [#28-1]. At the time of the installation, LKC had no knowledge of any negligent or faulty installation by Kenvo. Id. Ex. A ¶ 9 [#28-1].

The Project was completed in April 2015. Id. Ex. A ¶ 10 [#28-1]. In a series of three reports, dated May 29, August 6, and August 26, 2015, the Project's architect, William Rawn Associates ("the Architect") notified LKC of a series of flooring system deficiencies.[2] Id. Ex. F [#28-6], Ex. G [#28-7], Ex. H [#28-8]. On September 14, 2015, LKC informed Kenvo that LKC was withholding $192,383.39 in payments to Kenvo to offset amounts anticipated by LKC to fix the floor deficiencies. Id. Ex. I [#28-9], Ex. J ¶¶ 6,9 [#28-10].[3]

---

[2] Specifically, the Architect noted the following defects: (1) the flooring exhibited noticeable softness that affected bouncing balls; (2) the floor failed to absorb the acoustics generated by sports activities; (3) there were significant installation deficiencies with the floor, including the "bowing" plywood and incorrect installation of the plywood, cement boards, volleyball net, and the unauthorized installation of the "thru-bolt" attachments. O'Donnell Aff. Ex. F [#28-6], Ex. G [#28-7], Ex. H [#28-8].

[3] Following LKC's decision to withhold the remainder of the payments, in October 2015, Kevno filed a civil action against LKC in Norfolk County Superior Court. O'Donnell Aff. Ex. J [#28-10]. One month later, LKC filed its counterclaim, see id. Ex. K [#28-11], and in December 2015, Kenvo tendered a written request for LKC's counterclaim under the CCIP Policy, id. Ex. L [#28-12]. On February 18, 2016, Arch denied Kenvo's request, concluding that the CCIP Policy did

On June 2, 2016, the Architect sent LKC a "Letter of Non-Compliance," noting that "[t]he Resilient Acoustic Isolation Subfloor in the gymnasium is not in compliance with the Contract Documents" and requiring specific performance under "Actions Required." Id. Ex. O at 2 [#28-15]. On June 3, 2016, LKC, through its insurance broker, submitted a request to Arch for coverage of the costs LKC expected to incur in order to remedy the Project floor, see id. Ex. P [#28-16], which Arch denied on July 19, 2016, raising the same arguments that Arch has in defense of this litigation, see id. Ex. R [#28-18].

B. The Policy Terms

Under Section I, Part 1, titled "Coverages," Arch:

> Will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Id. Ex. C at 33 [#28-3].

Section I, Part II, outlines the exclusions to coverage, which includes:

> b. Contractual Liability
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement; or
> (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

---

not afford defense or indemnification coverage for LKC's counterclaim or any costs incurred to remedy the alleged floor deficiencies. Id. Ex. M [#28-13]. Kenvo and LKC eventually entered into a settlement agreement that required Kevno to pay an additional $85,000.00 in addition to the amounts withheld by LKC. Id. Ex. N [#28-14].

Id. Ex. C at 34 [#28-3].[4]

II.  DISCUSSION

   A. "Legally Obligated to Pay as Damages"

      *1. Contract Liability*

Arch argues that LKC's claimed payments and losses are not "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies," and that LKC therefore is not entitled to indemnification coverage. Arch Ins. Co.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") at 10 [#26]. LKC argues that Kenvo's defective flooring job falls under "property damage," and that when the Architect rejected the flooring work, LKC became legally obligated pursuant to the terms of its contract with the Winsor School to fix the work Kenvo performed. Opp. Lee Kennedy Arch Ins. Co.'s Mot. Summ. J. ("Pl.'s Opp.") at 3 [#36].[5] LKC argues further that "legally obligated to pay" does not require any demand or formal lawsuit. Id.

---

[4] Under Section V, titled "Definitions," an "insured contract" is defined as: (1) "[a] contract for a lease of premises"; (2) "[a] sidetrack agreement"; (3) "[a]ny easement or license agreement"; (4) "[a]n obligation, as required by ordinance, to indemnify a municipality, except in connection with work for that municipality"; (5) "[a]n elevator maintenance agreement"; (6) "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." O'Donnell Aff. Ex. C at 45 [#28-3].

[5] LKC cites to Sections 2.4 and 4.2.6 of the contract with the Winsor School. See Arch Ins. Co.'s Resp. Pl.'s Statement Undisputed Facts ¶ 13 [#44]. Section 2.4, titled "Owner's Right To Carry Out The Work," states:

> If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a three-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In performing any work pursuant to this Section 2.4.l, the Owner shall have the right to take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor or any Subcontractor. In such case an

4

Under Massachusetts law, interpretation of an insurance contract "is ordinarily a question of law for the court." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 783 (1st Cir. 2011). A court assessing a contract must first determine if a contract is ambiguous, and if so, examine the language of the contract itself prior to consideration of the extrinsic evidence and intent of the parties. Id. (internal citations omitted). Where a contract is unambiguous, the court interprets the policy's words in light of their plain meaning, considering the document as a whole. See Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42-43 (1st Cir. 2016); B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004). The insured "generally bears the burden of

---

>       appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the actual cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.
>
> Aff. Of Michael Heath Concerning Def.'s Mot. Summ. J. & Pl.'s Cross-Mot. Summ. J. ("Heath Aff.") Ex. 1B at 35 [#34-2].
>
> Section 4.2.6 states:
>
> The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.
>
> Id. Ex 1B at 45 [#34-2].

proving that a particular claim falls within a policy's coverage." Salvati v. Am. Ins. Co., 855 F.3d 40, 45 (1st Cir. 2017).

In reviewing the Policy, the court finds that LKC's argument that the phrase "legally obligated to pay" may cover liability it assumed in its contract with Winsor is precluded by other provisions of the Policy, specifically, Section I, Part II. That section excludes from coverage "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." O'Donnell Aff. Ex. C at 34 [#28-3].[6] To the extent that LKC bases its claim on the contract with Winsor in which LKC assumed liability for the defective work, LKC's coverage claim falls directly within the contract liability exclusion.

This exclusion is consistent with the general rule, articulated in Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 67-69 (1st Cir. 2012), that the phrase "legally obligated to pay as damages" in a commercial general liability insurance policy provision applies only to tort liability and not contractual liability.[7] In Lopez, the First Circuit joined the majority of courts to rule on this topic. See, i.e., Data Specialties, Inc. v. Transcon. Ins. Co., 125 F.3d 909, 911 (5th Cir. 1997) ("[T]he CGL policy language 'legally obligated to pay as damages' applies only to tort-based obligations."); Smith Mailer Mfg. v. Lib. Mut. Ins. Co., No. 95-56696, 1997 WL

---

[6] LKC is not aided by either of the two exceptions to the contractual liability exclusion. See O'Donnell Aff. Ex. C at 34 [#28-3]. First, as discussed further below, LKC cannot establish that it would be liable for the property damage in the absence of the contract terms. Second, the contract is not an "insured contract" as defined in Section V of the Policy.

[7] Although the insurance policy here is a controlled insurance program policy ("CCIP"), the principle difference between the two policies, as represented by Arch in its Summary of Relevant CCIP Insurance Policy Terms [#56], is that the CCIP policies may be extended to cover different projects for multiple years by endorsements to the main policy. In its Reply Memorandum of Lee Kennedy Co., Inc. on Relevant CCIP Insurance Policy Terms [#59], LKC does not dispute this contention.

6

407862, at *3 (9th Cir. July 21, 1997) (unpublished table decision) ("California courts have consistently interpreted [the "legally obligated to pay as damages"] language to cover only tort liabilities and not those liabilities arising in contract.") (internal citations and quotation marks omitted); Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 597–98 (3d Cir. 2009) (addressing the phrase "legally obligated to pay" in a CGL policy and noting that "Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract ... claims," and that "[t]he purpose and intent of a general liability insurance policy is to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking") (citations and internal quotation marks omitted); VBF, Inc. v. Chubb Grp. of Ins. Cos., 263 F.3d 1226, 1231 (10th Cir. 2001) ("The phrases, 'legally obligated to pay' and 'liability imposed by law' refer only to tort claims and not contract claims."). In sum, this court finds no ambiguity in the Policy language and enforces the contract according to its express terms, which provides no coverage for contract liability.

### 2. *Adjudication as a Threshold Condition*

Nor can LKC establish that coverage for the costs it incurred in repairing the gymnasium floor in the absence of the contract, as it cannot show that it in the absence of the contract it has "become legally obligated to pay [those costs] as damages" (emphasis added). Because LKC fixed the Project's defective flooring without "any adjudication of [LKC's] liability in any civil or arbitration proceedings, or even the entry into a settlement agreement with the School," LKC cannot establish that it was legally obligated to pay the amounts (but for the contract) and therefore cannot force Arch to cover the voluntary payments.

Two recent cases cited by Arch undermine LKC's contrary argument. In Sanders, the First Circuit held that a third-party's demand letter to the appellant was not the functional equivalent of a suit and did not trigger appellee's duty to defend. 843 F.3d at 46. One year later, in Salvati, the First Circuit reviewed the language of an insurance policy in which the insurance company agreed to "pay on behalf of any Insured those sums in excess of the Primary Insurance that any Insured becomes legally obligated to pay as damages." 855 F.3d at 45. After the appellant reached a settlement with the defendants and their primary insurers, the appellant sought to recover the amounts exceeding the primary policy limits from the defendants' excess insurer. Id. at 43. The First Circuit held that "damages" in the indemnification provision covers court judgments as well as "arbitrations and any other alternative dispute resolution proceedings in which such damages are claimed." Id. at 45 (internal quotations omitted).

Massachusetts shares comparable case law about the duties to defend and indemnify. Whereas an insurer's obligation to defend is measured by the allegations of the underlying complaint, a duty to indemnify "arises only after the insured's liability has been established and is between the insurer and the insured." Wilkinson v. Citation Ins. Co., 447 Mass. 663, 671 (2006). The duty to indemnify must be "determined by the facts, which are usually established at trial" or from a settlement. Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1100 (1st Cir. 1989); see also Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 372 (D. Mass. 2015) ("[A] declaratory judgment is not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying action has not determined liability or adjudicated factual disputes."). Collectively, these cases stand for the general proposition that a contractual obligation to defend or indemnify must be preceded by a formal adjudication to determine liability and/or damages.

Without a formal adjudication of the facts, an insurance company is left without a process to determine whether indemnification is required and if so, the proper amount to reimburse the insured. Such is the case here: when Kenvo failed to properly install the flooring, the Architect sent to LKC a "Letter of Non-Compliance," which required specific performance. See O'Donnell Aff. Ex. O at 2 [#28-15]; Health Aff. Ex. 2 at 2 [#34-3]. LKC performed accordingly. During the remediation process, LKC noted that the school also requested a design change in the flooring in addition to LKC fixing Kenvo's work. O'Donnell Aff. Ex. Q at 2 [#28-17]. Although LKC reported to Arch that there would be discussions with the Winsor School regarding the school paying a portion of the design change and repair, there is no evidence before this court that suggests that the Architect, the Winsor School, or Kenvo agreed to pay a portion of the design change. Without formal adjudication of the costs, Arch has no way of ascertaining what remedial work should be covered under the Policy, if any, and what financial costs LKC may have unilaterally agreed to assume.

III. CONCLUSION

For the above reasons, Arch's Motion for Summary Judgment [#25] as to the breach of contract claim (Count I) and declaratory judgment claim (Count III) is ALLOWED and LKC's Cross-Motion for Summary Judgment [#32] as to the declaratory judgment claim (Count III) is DENIED.

IT IS SO ORDERED.

Date: January 4, 2019  /s/ Indira Talwani
United States District Judge